IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARTURO MORENO,                                  Case No. 3:14-cv-01984-AA

    Plaintiff,                                  OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

    Defendant.

---

Bruce Brewer
Law Offices of Bruce W. Brewer, PC
P.O. Box 421
West Linn, OR 97068
    Attorney for plaintiff

Billy J. Williams
Janice E. Hebert
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Heather L. Griffith
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Attorneys for defendant

1 – OPINION AND ORDER

AIKEN, Judge:

Plaintiff Arturo Moreno seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Plaintiff protectively filed an application for DIB on July 5, 2011 alleging disability beginning May 29, 2009. Tr. 85, 142. Following a denial of benefits, plaintiff requested a hearing before an administrative law judge (ALJ). On May 31, 2013, an ALJ determined plaintiff was not disabled. Tr. 8-25. The Appeals Council then denied plaintiff's request for review. Tr. 7. This appeal followed.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) finding his symptom testimony not credible; (2) discounting the opinions of Dr. Lisa Sprague, M.D., and physician's assistant certified ("PAC") Jackai Yip; (3) discounting lay opinion evidence from his former employer, Ted Schopf; and (4) relying on vocational expert (VE) testimony because the hypothetical presented to the VE did not reflect all his limitations that were supported by the record. Pl.'s Br. 4-19.

I.  Plaintiff's Credibility

Plaintiff argues that the ALJ erred by finding his subjective testimony not credible because the ALJ "did not specify what testimony was not credible" and "did not identify the evidence that undermined [his] complaints." *Id.* at 11, 16-17. Plaintiff also argues that he could not afford medical care and, therefore, "the dearth of medical evidence after [he] lost his insurance was used erroneously by the ALJ." *Id.* at 14.

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "not entirely credible," in part, because his activities of daily living (ADL) showed fewer limitations than alleged. Tr. 15. In so finding, the ALJ noted plaintiff's

3 – OPINION AND ORDER

statements that walking, using the bathroom, and working in the yard cause back pain and, specifically, that walking ten to fifteen minutes "would cause a spasm the next day" and that walking around the block caused left-sided sciatica. *Id.* Moreover, the ALJ noted that plaintiff "described pain from standing or sitting for a prolonged period" and that plaintiff claimed his lifting was so limited that picking up a carton of milk required the use of both hands. *Id.* The ALJ contrasted plaintiff's statements with plaintiff's ADLs from the record, which include doing stretching exercises, going for walks, cooking, cleaning, reading, doing laundry, washing dishes, driving, shopping, managing his funds, playing catch with his grandson for fifteen minutes before needing to take a break, mowing and raking the yard, and caring for a dog. *Id.* The ALJ also noted plaintiff's testimony that he "looked for work in 2010, 2011, and recently." *Id.*

The ALJ also found plaintiff's symptom testimony not credible because his treatment had been "minimal, conservative, and routine." *Id.* In so finding, the ALJ noted that plaintiff's file lacked medical records "from 2009 or 2010, the first eighteen months after the alleged onset date" and that in 2008, the year leading up to his alleged disability onset date, plaintiff was reportedly "doing well" with stretches and exercises, was not limping, and had told Dr. John Alferes, M.D., that he had pain flares rarely and was planning a trip to Texas to visit family. *Id.* (citing Tr. 244). The ALJ added that in 2011, plaintiff treated his back pain conservatively with ice and heat and that vocational rehabilitation wrote that he "had no disability that would prevent employment." *Id.* The ALJ also noted a medical report from 2012, where plaintiff assessed his back pain at two out of ten and reportedly managed this pain with ibuprofen and by using marijuana at night to sleep. Tr. 16 (citing Tr. 277, 283, 296-98). The ALJ further noted that plaintiff did not obtain a medical marijuana card until January 2012 and that in 2013, he declined physical therapy and muscle relaxers. *Id.* (citing Tr. 288-90, 301).

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id.* Further, when a claimant's daily activities "are transferable to a work setting" or "contradict claims of a totally debilitating impairment," performance of those activities may serve as a basis for discrediting a claimant. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Here, the ALJ provided several specific, cogent reasons to support his adverse credibility finding. First, the ALJ observed that plaintiff's ADLs were more extensive than the limitations he claimed. The ALJ contrasted plaintiff's statements that he gets pain from standing or sitting

5 – OPINION AND ORDER

for a prolonged period, needs two hands to lift a milk carton, gets sciatica from walking around the block, and gets spasms the following day if he walks for ten to fifteen minutes, with evidence from the record that plaintiff goes for walks, plays catch with his grandson for fifteen minutes, mows and rakes the yard, does stretching exercises, cooks, cleans, does laundry, washes dishes, drives, shops, cares for a dog, and searches for work.

Second, the ALJ noted that plaintiff's file was devoid of medical records from the first year and a half after his alleged disability onset date. Although plaintiff cannot be denied benefits for failing to obtain treatment that would ameliorate his condition if he cannot afford that treatment, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995), the ALJ did not rely solely the dearth of plaintiff's medical evidence in reaching his adverse credibility finding. Rather, the ALJ noted that plaintiff's records from the year prior to his alleged disability onset date, as well as the records from 2012 and 2013, the period subsequent to plaintiff resuming medical treatment, revealed that plaintiff was able to treat his pain, which he rated at only a two out of ten, with minimal and conservative treatment methods, such as ice, heat, ibuprofen, and marijuana at night as a sleep aid. The ALJ further noted that plaintiff rejected physical therapy and muscle relaxers and did not obtain his medical marijuana card until January 2012, over two and a half years into his alleged disability period. Finally, the ALJ noted that vocational rehabilitation opined in 2011 that plaintiff had no disability that would prevent employment.

While variable interpretations of this evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. *See Batson*, 359 F.3d at 1198. In sum, the ALJ identified which of plaintiff's subjective symptom statements he found not credible and provided clear and convincing reasons, supported by substantial evidence, for rejecting those statements. As such, the ALJ's credibility finding is affirmed.

II.     Credibility of Dr. Sprague and Ms. Yip's Opinions

On April 10, 2013, plaintiff's treating medical providers, Dr. Lisa Sprague, M.D., and Jackai Yip, PAC, submitted an attorney supplied questionnaire about plaintiff's residual functional capacity (RFC). Tr. 235, 305-09. On that questionnaire, Dr. Sprague and Ms. Yip opined that plaintiff could lift twenty pounds occasionally and ten pounds frequently, sit fewer than six of eight hours, and stand and walk less than two of eight hours. *Id.* They opined that plaintiff would need to alternate between sitting and standing throughout the workday and that he would develop stiffness and discomfort if he stood twenty minutes or longer. *Id.* They further opined that plaintiff could only occasionally climb ramps and stairs, and could never do other postural activities. *Id.* They added that plaintiff could nave no exposure to extreme cold, wetness, vibration, fumes, or hazards, should avoid concentrated exposure to noise, and would miss at least five work days per month. *Id.* They noted that they had seen plaintiff since October 2012, but opined that the limitations they endorsed applied as of May 2009. *Id.*

The ALJ gave Dr. Sprague and Ms. Yip's opinions "little weight," because: (1) their treating records do not support the limitations on standing, walking, sitting, and postural movement; (2) they failed to explain how the limitations they endorsed could apply as of May 2009 when neither of them saw plaintiff until October 2012, plaintiff's file does not contain records from 2009 or 2010, and plaintiff's records from 2011 and after show only conservative treatment; and (3) it appears they based at least some of their responses on plaintiff's subjective statements. Tr. 16.

Additionally, the ALJ summarized the conflicting medical opinions of consultative examiner, Angela Jones, M.D., and non-examining reviewer, Neal Berner, M.D., who both opined that plaintiff was limited to "medium" work, could lift 25 pounds frequently and 50

7 – OPINION AND ORDER

pounds occasionally, and should be limited to "occasional" stooping. Tr. 16-17 (citing 74-83, 271-76). The ALJ found that Dr. Jones' opinion, which added that plaintiff had a "normal, slow gait," but no limitations in sitting, standing, or walking, was due "great weight," because it was based on a "thorough examination," was "fully explained," and was "consistent with the treating evidence." *Id.* at 16-17 (citing 271-76). Moreover, the ALJ found that Dr. Berner's opinion, which added that plaintiff should only occasionally climb, crawl, and stoop was due "significant weight" because it was consistent with the other evidence in the record. *Id.* (citing Tr. 74-83).

Plaintiff argues that ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Sprague and Ms. Yip's opinions because: (1) their opinions were consistent with his x-rays from 2005, 2006, and 2011, as well as his treating medical records, including his musculoskeletal evaluations from October 2012 and January 2013 where he complained his back pain "was aggravated by bending or twisting, and relieved while lying flat"; (2) his refusal of physical therapy and muscle relaxers was not a valid reason to the reject Dr. Sprague and Ms. Yip's opinions; and (3) they were qualified to render an inference as to his disability onset date because they had his treatment records from 2005, which substantiate that his impairments and pain symptoms were present prior to his alleged disability onset date. Pl.'s Br. 4, 7-11 (citing Tr. 68, 79, 271-76, 300).

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ may reject the uncontradicted opinion of a treating or examining physician by providing clear and convincing reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830-31; *Andrews*, 53 F.3d at 1043. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and

legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). Although the contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Id.*

It is well-established that "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"). Further, "[a] conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). *See also Molina*, 674 F.3d at 1111–12 (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion). Finally, evidence from "other sources," including physician's assistants, may be used to show the severity of a claimant's impairments and how they affect his ability to work. 20 C.F.R. § 404.1513(d). In order to reject evidence from "other sources," the ALJ must give germane reasons for doing so. *Molina*, 674 F.3d at 1111.

9 – OPINION AND ORDER

Here, as an initial matter, all of plaintiff's treatment notes from the Multnomah County Health Department were signed by Ms. Yip only and not Dr. Sprague. Tr. 300-02, 310-11. Dr. Sprague and Ms. Yip, however, both signed the attorney supplied questionnaire that included clauses stating that a "treatment relationship" existed with plaintiff from October 23, 2012, through the date the questionnaire was signed on April 10, 2013, and that "[m]y signature below confirms that the information on this document reflects my clinical judgment, independent of the patient's own self-assessment." Tr. 309. Accordingly, this Court finds that Dr. Sprague was a "treating" medical provider and that both Dr. Sprague and Ms. Yip's opinions were formulated independent of plaintiff's subjective complaints. Further, according to the regulations, the ALJ was not obligated to consider the records from Ms. Yip, a physician's assistant, as a medical source. 20 C.F.R. §§ 404.1513(a). Therefore, the ALJ needed only to provide germane reasons to reject Ms. Yip's opinion. *Molina*, 674 F.3d at 1111. Moreover, because Ms. Yip and Dr. Sprague's opinions were contradicted by the opinions of Drs. Jones and Berner, the specific and legitimate standard applies to Dr. Sprague's opinion. *Bayliss*, 427 F.3d at 1216. The Court finds that the ALJ met these standards here for several reasons.

First, the ALJ provided a detailed and thorough summary of the facts and of the conflicting medical opinion of Dr. Jones, who had the opportunity to examine plaintiff, and whose opinion the ALJ gave great weight to. Although the ALJ's reliance on Dr. Jones' contrary opinion does not alone constitute a specific, legitimate reason for rejecting Dr. Sprague's "treating" medical opinion, it provides a germane reason for rejecting Ms. Yip's "other source" opinion. *Bayliss*, 427 F.3d at 1218. Moreover, because Dr. Jones' opinion was consistent with Dr. Berner's independent opinion, who the ALJ gave significant weight to, this Court finds that

the ALJ's reliance on these two conflicting opinions constitutes substantial evidence in support of his finding that Dr. Sprague's opinion was not credible. *Magallanes*, 881 F.2d at 751.

Second, the ALJ found that Ms. Yip and Dr. Sprague's treating records do not support the limitations they endorsed in plaintiff's RFC questionnaire. This Court agrees. Ms. Yip and Dr. Sprague saw plaintiff only twice for his alleged back pain prior to completing the RFC questionnaire and the chart notes from both visits reveal only normal objective findings.[1] Specifically, the objective findings in the chart notes from plaintiff's first visit on October 23, 2012, reveal that he had a normal gait, no paraspinal muscle spasms or palpitations, his ability to bend, rotate, and extend in every direction was "intact," he a strength rating of five out of five bilaterally, a pain rating of three out of ten, negative test results for radicular pain in a straight leg raise test, his sciatica was "subsided," and he "refused physical therapy or muscle relaxant for pain." Tr. 301. The chart notes from plaintiff's second visit on April 10, 2013, the morning the RFC questionnaire was completed, reveal that plaintiff was "A&O [alert and oriented] in NAD [no acute distress], was sitting comfortably, well-appearing, [and] well-developed." Tr. 310.

Accordingly, because Ms. Yip and Dr. Sprague's treatment notes from both visits reveal normal objective findings, this Court finds that the ALJ reasonably concluded Dr. Sprague and Ms. Yip's treatment notes do not support the limitations they endorsed in the RFC. As such, this was an adequate reason for the ALJ to discredit the opinions of Ms. Yip and Dr. Sprague. *Ghanim*, 763 F.3d at 1161; *Molina*, 674 F.3d at 1111–12; *Valentine*, 574 F.3d at 692–93.

Finally, the ALJ found that Dr. Sprague and Ms. Yip provided no explanation to support their conclusion that plaintiff was disabled as of May 29, 2009, despite having not seen plaintiff

---

[1] As stated above, plaintiff's subjective complaints were properly discredited by the ALJ and Ms. Yip and Dr. Sprague also confirmed their RFC assessments were made independent of plaintiff's subjective complaints. As such, this Court is unpersuaded by plaintiff's argument that Ms. Yip and Dr. Sprague's RFC assessment was substantiated by his subjective complaints.

11 – OPINION AND ORDER

until October 2012. This omission is particularly troublesome here due to the absence of medical records from 2009 and 2010. Moreover, although plaintiff asserts that his records from 2005 prove that his impairments and pain symptoms were present prior to his alleged disability onset date, critically, those same records also substantiate that he was still working in 2005 and for another four years thereafter, and that in 2005 he was able to take a trip to Japan that he reportedly "enjoyed," "but with pain." Tr. 235-36.

Although plaintiff disagrees with the ALJ's interpretation of the medical record, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson.*, 359 F.3d at 1198. Accordingly, because Dr. Sprague and Ms. Yip failed to provide explanations for their conclusions that plaintiff was disabled three and a half years before ever meeting him, and because there were no medical records available to support their conclusions from the first eighteen months after plaintiff's alleged disability date, this Court finds the ALJ did not err by rejecting Dr. Sprague and Ms. Yip's RFC. *Thomas*, 278 F.3d at 957; *Crane*, 76 F.3d at 253. Moreover, although plaintiff correctly asserts that his refusal of physical therapy and muscle relaxers was not a valid reason to the reject Dr. Sprague and Ms. Yip's opinions, because the ALJ also provided several specific and legitimate reasons supported by substantial evidence for rejecting Dr. Sprague's opinion, and several germane reasons for rejecting Ms. Yip's opinion, this Court finds the ALJ's error harmless. *Stout*, 454 F.3d at 1054. As such, the ALJ's credibility finding with regard to Ms. Yip and Dr. Sprague is affirmed.

III.  Rejection of Lay Testimony

Plaintiff asserts that the ALJ neglected to consider the lay opinion of Ted Schopf, plaintiff's manager from 1999 to 2009. Pl.'s Br. 7. Mr. Schopf wrote a letter on plaintiff's behalf on April 9, 2013, stating that floor sales clerks, such as plaintiff, "seldom have the

opportunity to sit down on the job, even when cashiering" and "often . . . need to lift and carry more than fifty pounds." Tr. 154. Mr. Schopf wrote that upon returning to work in 1999 after undergoing lower back surgery, he allowed plaintiff to work at a "reduced standard of efficiency," take additional breaks beyond those normally provided in the morning, at lunch, and in the afternoon, assisted him with lifting and carrying merchandise, and exempted him from the "heavier aspects" of warehouse work. *Id.* Mr. Schopf concluded that it eventually became "more difficult" to accommodate plaintiff's needs for restrictions to perform his "rather physically demanding job." *Id.*

The ALJ considered the Mr. Schopf's opinion and found that although he opined that plaintiff required accommodations for his alleged disability, plaintiffs "medical providers gave only mild work-related limitations while [he] was employed." Tr. 15. The ALJ specifically noted that in January 2006, Dr. Claudia Martin, M.D., opined that plaintiff should not work long shifts, but that she did not limit his weekly work hours. *Id.* (citing Tr. 248). The ALJ added that in all the years since then, "no provider [has] updated this restriction." *Id.* Finally, the ALJ noted that a vocational rehabilitation counselor opined in September 2011 that plaintiff had no disability that would prevent employment and that in 2010, 2011, and recently, plaintiff testified that he looked for work. *Id.* (citing Tr. 33, 277).

Lay testimony regarding a claimant's symptoms or how impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114. The ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Id.* (citation and internal quotation omitted). Inconsistency with medical evidence is a valid reason to discount lay statements. *Bayliss*, 427 F.3d at 1218.

Here, the ALJ discounted Mr. Schopf's opinion because the medical reports from that time period revealed only mild limitations and, notably, because no doctor limited plaintiff's weekly work hours. *Bayliss*, 427 F.3d at 1218. Moreover, the ALJ noted that in 2011, a vocational rehabilitation counselor opined that plaintiff had no disability that would prevent employment. Finally, the ALJ noted that plaintiff was seeking employment during the relevant time period. Accordingly, this Court finds that the ALJ provided several germane reasons for discounting Mr. Schopf's opinion. *Molina*, 674 F.3d at 1114. As such, the ALJ's finding with regard to Mr. Schopf's opinion is affirmed.

IV.  <u>ALJ's Reliance on VE Testimony</u>

Plaintiff argues that the ALJ erred by relying on the VE's testimony that he could perform other jobs in the national economy because the hypothetical presented to the VE did not reflect all his limitations that were supported by the record. Pl.'s Br. 19. Specifically, plaintiff argues that because the ALJ improperly rejected his symptom statements, as well as the opinions of Dr. Sprague, Ms. Yip, and Mr. Schopf, the hypothetical question posed to the VE did not reflect all his limitations and, therefore, "had no evidentiary value." *Id.*

The ALJ found that plaintiff had the RFC to perform "medium work" with the additional limitations that he must never climb ladders, ropes, and scaffolds, and that he can only occasionally stoop, kneel, crawl, crouch, or climb ramps and stairs. Tr. 14.

The RFC is the maximum a claimant can do despite his limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and

translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed above, the opinions of plaintiff, Dr. Sprague, Ms. Yip, and Mr. Schopf were properly discredited by the ALJ. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. *Bayliss*, 427 F.3d at 1217-18; *Stubbs-Danielson*, 539 F.3d at 1175-76. The ALJ's RFC is upheld.

## CONCLUSION

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 6th day of April 2016.

_____
Ann Aiken
United States District Judge

15 – OPINION AND ORDER